UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ROBERT J. MIDDLEWORTH,

                Petitioner,

   v.

JEFFREY A. UTTECHT,

                Respondent.

NO. 4:14-CV-5124-TOR

ORDER DENYING PETITIONER'S AMENDED WRIT OF HABEAS CORPUS

BEFORE THE COURT is Petitioner Robert J. Middleworth's Amended

Petition for Writ of Habeas Corpus. ECF No. 4. Respondent Jeffrey A. Uttecht

has answered the Petition and filed relevant portions of the state court record. ECF

Nos. 23-24. The Court has reviewed the record and files herein, and is fully

informed. For the reasons discussed below, Petitioner's Amended Petition for Writ

of Habeas Corpus (ECF No. 4) is **DENIED**.

## BACKGROUND

On December 19, 2014, Petitioner Robert J. Middleworth, a prisoner at the

Coyote Ridge Corrections Center and proceeding *pro se*, filed this action

challenging the lawfulness of his 2012 state conviction. ECF No. 1. Petitioner filed an Amended Petition on March 9, 2015. ECF No. 4. Petitioner challenges his 2012 state jury conviction for first degree rape of a child and first degree child molestation under 28 U.SC. § 2254. *Id.* at 1. The underlying facts and procedural history, summarized by the Washington Court of Appeals, are as follows:

> Mr. Middleworth dated K.D., who eventually moved along with her four-year-old daughter B.D. into the basement apartment Mr. Middleworth occupied in his mother's house. Not long thereafter Mr. Middleworth and K.D. had to take B.D. to the hospital due to pain while urinating. Seeing signs of possible sexual abuse, a nurse asked B.D. if anyone had touched her "down there." B.D. stated that Mr. Middleworth had done so.
>
> CPS forensic child abuse investigator Brook Martin interviewed B.D. on September 28, 2010. The interview was videotaped and law enforcement viewed the interview remotely from an observation room. B.D. disclosed an act of molestation during the interview, but denied any acts that constituted rape.
>
> On the way home from the interview, B.D. commented that one of the balloons in the car looked like a "wiener that went in her mouth." Upon hearing about that remark, Ms. Martin conducted a second interview on September 30, 2010. She briefly mentioned during her testimony at the first trial that she had conducted a follow-up interview on the 30th due to remarks made in the car after her first interview. Neither counsel asked Ms. Martin about that interview.
>
> The defense rested without calling witnesses. The jury convicted Mr. Middleworth as charged on one count of first degree child rape and one count of first degree child molestation. Represented by new counsel, Randy Lewis, Mr. Middleworth obtained a new trial on the basis that his original counsel had prevented him from testifying. After the defense replaced Mr. Lewis with Mr. Jerry Makus, the case eventually was rescheduled for a new trial in early 2012.

The court set a status conference hearing for January 11, 2012, prior to the retrial. The matter was heard in chambers, but was reported so that a record was available in the event that Mr. Middleworth, who was trying to fire Mr. Makus, alleged ineffective assistance of counsel. The court explained that the conference was intended to be an informal discussion and that the parties and witnesses were not allowed to be present.

Mr. Middleworth asked to be present, but the court did not allow the request. At the hearing, Mr. Makus confirmed that he was prepared to go to trial but acknowledged that his client desired to terminate his representation. The trial judge indicated that the representation issue would be taken up later in the courtroom in Mr. Middleworth's presence.

The court also asked if there were any discovery issues and the State asked the court to clarify its earlier ruling about B.D.'s taped interview. The court clarified that the entire interview would be admissible and also stated that it would not change its previous ruling about B.D.'s foster care placement. The parties also discussed the availability of a defense expert who would have to travel from Wisconsin. The matter was complicated because the witness alleged that the first report attributed to him by the defendant – and which was very favorable to the defendant – had been forged. The expert did claim responsibility for a different report that was less favorable to the defense. Defense counsel also asked, and the prosecutor answered, a question about a State's expert's opinion concerning herpes testing of Mr. Middleworth. The parties then went into the courtroom and dealt with Mr. Middleworth's request to replace Mr. Makus.

The second trial began January 18, 2012. It ended in a mistrial when excluded evidence was presented during the State's case. A third trial was held April 2 thru April 10, 2012. Mr. Makus represented Mr. Middleworth at trial. Ms. Martin again testified that there had been a second interview, although the prosecutor did not inquire further. Defense counsel asked if the second interview had been videotaped and where the tape was. Ms. Martin answered that the interview had been videotaped but she had not given the tape to law enforcement because they had not wanted it.

1   Outside the presence of the jury, the court and parties further inquired
2   into the second interview.  Ms. Martin explained the remark that led to
    the second interview.  The court ordered that the video be produced
3   immediately and that the State explain why it had not been produced
    earlier.  The defense moved to dismiss the charges due to this
4   discovery violation.  After reviewing the second tape, the trial judge
    summarized his impressions of it.  B.D. has stated that Nana [K.D.'s
5   mother] had put bandages on her inner thigh, but no context to the
    statement was given.  There was no allegation that either Nana or her
6   longtime companion ("Papa Brian") had injured B.D.

7   The court concluded that a continuance for the defense to investigate
    was appropriate; the matter was continued five days to April 10.  The
8   court indicated that the parties could recall any witnesses who had
    already testified.  The State did not recall any witnesses and rested.
9   The defense called the CPS social worker who had transported K.D.
    When she could not recall any statements by B.D., the social worker
10  was not put before the jury.  K.D. was called and testified that she had
    once left B.D. with her mother during the time she lived with the
11  defendant.  The foster mother testified that she had bathed B.D. who
    cried in pain when her thighs were washed and cried "Brian" several
12  times.  "Papa Brian" also was called to testify; he denied hurting B.D.
    Mr. Middleworth took the stand and also denied touching B.D.
13  inappropriately.

14  The jury convicted Mr. Middleworth as charged.  The court sentenced
    him to a high end standard range minimum term of 160 months.  The
15  court also ordered "restitution" of $2,597.22 in expert witness costs
    payable to the county prosecutor's office and an additional sum for
16  health care for B.D.  Mr. Middleworth then timely appealed to this
    court.

17  ECF No. 24-1 at 22-26 (Ex. 2).

18      The Washington Court of Appeals only reversed the restitution award for the

19  expert witness fees and otherwise affirmed Petitioner's convictions for first degree

20  child rape and first degree child molestation.  *Id.* at 22.  Petitioner filed a motion

for reconsideration, which the Court of Appeals denied.  *Id.* at 197-205 (Exs. 10; 11).  Petitioner then filed a petition for review in the Washington Supreme Court. *Id.* at 207-33 (Ex. 12).  On November 3, 2014, the Washington Supreme Court denied review.  *Id.* at 262 (Ex. 15).  On September 8, 2014, the Washington Court of Appeals issued its mandate.  *Id.* at 264 (Ex. 16).

On August 6, 2014, Petitioner filed a personal restraint petition in the Washington Court of Appeals.  *Id.* at 266-83 (Ex. 17).  On March 16, 2015, the Washington Court of Appeals addressed Petitioner's issues and dismissed his personal restraint petition.  *Id.* at 513-15 (Ex. 20).  Petitioner then moved the Washington Supreme Court for discretionary review, which was denied on October 7, 2015.  *Id.* at 519-39 (Exs. 22; 23).  The Washington Court of Appeals issued a certificate of finality on December 14, 2015.  *Id.* at 541 (Ex. 24).

On December 29, 2014, Petitioner also filed another personal restrain petition regarding the denial of a motion in the trial court for DNA testing from his genital lesions.  ECF No. 24-2 at 2-11 (Ex. 25).  Petitioner was appointed counsel in this matter.  *Id.* at 224-39 (Ex. 28).  The Washington Court of Appeals affirmed the trial court's denial of Petitioner's motion, finding the DNA testing requested would not provide significant new information or be likely to demonstrate innocence on a more probable than not basis.  *Id.* at 318 (Ex. 31).  Petitioner moved the Washington Supreme Court for discretionary review and the Court

denied review on June 28, 2017. ECF No. 24-3 at 5-64 (Exs. 33-35). The

Washington Court of Appeals issued its mandate on July 10, 2017. *Id.* at 66 (Ex.

36).

 Petitioner filed this federal 28 U.S.C. § 2254 habeas petition on December

19, 2014. His amended petition generally alleges four grounds for relief: (1) right

to a public trial; (2) right to be present; (3) double jeopardy; (4) a *Brady* violation

for failure of the prosecution to disclose a second interview of the victim; and (5)

accumulation of errors presents a significant constitutional issue. ECF No. 4.

## DISCUSSION

 A court will not grant a petition for a writ of habeas corpus with respect to

any claim that was adjudicated on the merits in state court proceedings unless the

petitioner can show that the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted
> in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d) sets forth a "highly deferential standard for

evaluating state-court rulings which demands that state-court decisions be given

the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation

omitted).

//

## I.    Exhaustion of State Remedies

The federal courts are not to grant a writ of habeas corpus brought by a person in state custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the State." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (quoting 28 U.S.C. § 2254(b)(1)(A)).  This exhaustion requirement is "grounded in principles of comity" as it gives states "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Id.* at 1023 (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

A claim must be "fully and fairly" presented to the state's highest court so as to give the state courts a fair opportunity to apply federal law to the facts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 276-78 (1971)).  Each claim must be presented in the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1981).

If the state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (citing *Picard*, 404 U.S. at 275) (internal quotation marks omitted).

Vague references to broad constitutional principles such as due process, equal protection, and a fair trial do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S 152, 163 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). A "claim for relief from habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray*, 518 U.S. at 162-63.

Here, the Court agrees with Respondent and finds that Petitioner fully and fairly presented claims 1, 2, and 4, rendering those claims exhausted within the meaning of 28 U.S.C. § 2254(c). *See* ECF No. 23 at 10. In regards to claim 5, Petitioner contends that Respondent appears to also concede that this claim is exhausted by noting that the Washington Court of Appeals rejected this cumulative error claim based on its finding that there was no errors to assess cumulatively. ECF Nos. 29 at 2; 23 at 42. The Court finds that exhaustion has been met for claim 5.

As to Petitioner's third claim, Respondent asserts that Petitioner's double jeopardy claim is only partially exhausted. ECF No. 23 at 10. In the context of a faulty jury instruction, Petitioner exhausted his claim. ECF No. 23 at 10. Respondent insists that to the extent Petitioner's double jeopardy claim is based on a sufficiency of the evidence argument, then the claim is not exhausted. *Id.* Petitioner alleges that he does not raise a sufficiency of the evidence argument and

any argument regarding the evidence was included to address the concerns raised by the Court in its order to submit an amended petition. ECF No. 29 at 3-4.

Petitioner argues in his amended petition that the offense of molestation and the offense of rape are the same because all the elements of rape are included in molestation. ECF No. 4 at 10. Petitioner then contends that the record fails to show that he touched B.D. more than one time, and thus the State failed to show evidence of two separate and distinct acts of child rape and child molestation. *Id.* at 11. Petitioner concludes that there is a possibility of a double jeopardy violation because no instruction expressly stated that the jury must find that each count represents an act distinct from all other charged counts. *Id.* at 11-12.

The Court liberally construes Petitioner's amended petition to bring a claim for double jeopardy in regards to faulty jury instructions, which was properly exhausted in state court. The Court agrees with Petitioner that his reference to other evidence does not constitute a claim for sufficiency of the evidence. Accordingly, the Court determines that Petitioner properly exhausted his claim for double jeopardy in regards to the jury instructions. The Court considers Petitioner's claims below.

## II. Unreasonable Application of Clearly Established Federal Law

A rule is "clearly established Federal law" within the meaning of section 2254(d) only if it is based on "the holdings, as opposed to the dicta, of [the

Supreme Court's] decisions." *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). A state court's decision is contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The state court need not cite to the controlling Supreme Court precedent, nor need it even be aware of the relevant case law, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* "[A]n unreasonable application of" clearly established federal law is one that is "objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 134 S.Ct. at 1702 (internal quotation marks and citation omitted). Of utmost importance, circuit precedent may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam).

In order to obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.* (quoting

*Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  Under the harmless error

standard of review adopted by the Supreme Court, even if a reviewing court finds

constitutional error, the challenged error must have caused "actual prejudice" or

had "substantial and injurious effect or influence" in determining the jury's verdict

in order for the court to grant habeas relief.  *Brecht v. Abrahamson*, 507 U.S. 619,

637 (1993) (citation omitted).

> If [the section 2254(d)] standard is difficult to meet, that is because it
> was meant to be ….  It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with [the Supreme] Court's precedents.
> It goes no further.  Section 2254(d) reflects the view that habeas
> corpus is a "guard against extreme malfunctions in the state criminal
> justice systems," not a substitute for ordinary error correction through
> appeal.  As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling on the
> claim being presented in federal court was so lacking in justification
> that there was an error well understood and comprehended in existing
> law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102-03 (citations omitted).

The petitioner bears the burden of showing that the state court decision is

contrary to, or an unreasonable application of, clearly established precedent.  *See*

*Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).  In conducting its habeas

review, a federal court looks "to the last reasoned decision of the state court as the

basis of the state court's judgment."  *Merolillo v. Yates*, 663 F.3d 444, 453 (9th

Cir. 2011) (citation omitted).  A rebuttable presumption exists:  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

### Claims 1:  Right to a Public Trial

Petitioner contends that he was deprived of the right to a public trial in regards to a status conference hearing, which was held prior to the second trial on January 11, 2012.  ECF No. 4 at 2, 4-7.  Respondent asserts that Petitioner cannot show a violation of the right to a public trial because he did not invoke the right at trial, arguing that Petitioner may only pursue a claim of ineffective assistance of counsel for not objecting to the allegedly closed proceeding.  ECF No. 23 at 19.

A criminal defendant has a right to a speedy and public trial pursuant to the Sixth Amendment, which is enforceable against the states through the Fourteenth Amendment.  U.S. Const. amend. VI, XIV.  "Although the Sixth Amendment refers to a 'public trial,' the right encompasses more than the trial itself, 'extending' to those hearings whose subject matter involve[s] the values that the right to a public trial serves."  *United States v. Rivera*, 682 F.3d 1223, 1228 (9th Cir. 2012) (quoting *United States v. Waters*, 627 F.3d 345, 360 (9th Cir. 2010)).  Those values include ensuring fair proceedings, reminding the prosecutor and

judge of their grave responsibilities, discouraging perjury, and encouraging witnesses to come forward. *Id.* at 1229.

A defendant in a criminal proceeding may forfeit the right to a public trial, "either by affirmatively waiving it or by failing to assert it in a timely fashion." *Id.* at 1232 (citing *Levine v. United States*, 362 U.S. 610, 619 (1960)). In *Levine*, the Supreme Court determined that the defendant forfeited his right to a public trial during a criminal contempt proceeding because he did not request the trial judge to open the courtroom, thereby giving notice of the claim and affording the judge an opportunity to address it. *Levine*, 362 U.S. at 619.

Here, Respondent argues that Petitioner failed to invoke any claim regarding a violation of his right to a public trial and he thus cannot pursue a public trial claim now. ECF No. 23 at 23. Respondent insists that Petitioner may only seek a claim for ineffective assistance of counsel because Petitioner's counsel did not promptly object to the closed status conference hearing. *Id.* Petitioner responds that the cases requiring a defendant to promptly object all involve the defendant being present at the disputed hearing, but he was excluded without a waiver. ECF No. 29 at 9.

The Court finds that Petitioner likely forfeited his right to a public trial as his counsel did not object to the closed status conference hearing. Even if Petitioner properly invoked this claim, the Court finds that he fails to show that the state

court adjudication was an unreasonable application of clearly established federal law.  The Washington Court of Appeals found that "[e]ven if we assume that there was a violation of the defendant's public trial and presence rights, he has already been accorded the remedy for such a violation – a new trial …. The violation, if any, before the second trial was remedied by the third trial."  ECF No. 24-1 at 28 (Ex. 2).

"[A] constitutional error does not automatically require reversal of a conviction." *Arizona v. Fulminate*, 499 U.S. 279, 306 (1991).  Automatic reversal is "required only if this error was a 'structural defect' that permeated '[t]he entire conduct of the trial from the beginning to the end' or 'affect[ed] the framework within which the trial proceeds.'"  *Campbell v. Rice*, 408 F.3d 1166, 1171 (9th Cir. 2005) (quoting *Arizona*, 499 U.S. at 309).  The court considers a simple "trial error" under the harmless-error review.  *Id.*  "A violation of the right to a public trial is a structural error."  *Weaver v. Massachusetts*, 137 S.Ct. 1899, 1908 (2017).  When an objection is made at trial and the issue is raised on direct appeal, "the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'"  *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)).  Yet, the Supreme Court found that in the context of an ineffective assistance of counsel claim in collateral review, the petitioner bears the burden of showing prejudice.  *Id.* at 1910-12.  The Supreme Court emphasized that the

finality interest is more at risk in a claim raised in a post-conviction proceeding, and direct review has often already given at least one opportunity for an appellate review. *Id.* at 1912.

Here, Respondent asserts that Petitioner should also be required to show prejudice in this collateral review proceeding. ECF No. 23 at 24-25. This Court finds the Supreme Court's decision in *Weaver* persuasive. This Court determines that while the right to a public trial is a structural defect, this does not necessitate an automatic reversal on collateral review when Plaintiff was afforded a third trial, which may have cured any error due to the closed status conference hearing prior to the second trial. The Court then considers the Petitioner's potential prejudice.

Petitioner argues that "[t]he rulings made before the second trial were not reconsidered in public with Mr. Middleworth present prior to this third trial." ECF Nos. 4 at 5; 29 at 11. The trial court determined that orders and rulings from the second trial "remain in full force and effect" for the third trial. ECF No. 24-4 at 98 (Ex. 38). Petitioner then asserts that the third trial perpetuated this error. ECF No. 4 at 5.

Respondent agrees that the trial judge stated all prior orders will remain in full force and effect. ECF No. 23 at 25. Yet, Respondent argues that although the trial court held an informal status conference in chambers during the second trial, the motions decided regarding child hearsay among others were heard on the

record in open court. ECF No. 23 at 25. The State and defense counsel agreed to abide by the same rulings from the second trial. ECF Nos. 23 at 25; 24-4 at 98

Petitioner responds that "[a] review of the public hearing and the non-public hearing demonstrates that they were not mirror images of one another." ECF No. 29 at 14. Petitioner argues that the discussion about the expert reports at the non-public hearing was not addressed at the public hearing. *Id.* Petitioner states that the trial court made rulings on the pornographic tapes and the minor forensic interview at the non-public hearing, which were not made at the public hearing. *Id.* The decision regarding the expert reports at the non-public hearing was different than anything discussed at the public hearing. *Id.* Petitioner also emphasizes that the conflict of interest issue was discussed after the trial court issued a preliminary ruling based on defense counsel's representations outside of Petitioner's presence. ECF Nos. 29 at 14; 24-3 at 173-74 (Ex. 37). Additionally, Petitioner argues that the parties agreed to abide by the "same rules," not the "same rulings" at the third trial. ECF Nos. 29 at 14-15; 24-4 at 98. Petitioner contends that "rules" and "rulings" are not the same and Respondent's conclusion is based on the wrong words. ECF No. 29 at 15.

After the second trial, defense counsel asked if he had to make the same pretrial motions that had already been decided again for the third trial, and the trial court responded in the negative. ECF No. 24-4 at 98 (Ex. 38). The prosecution

agreed that the parties "will abide by the same rules as the second trial," and the trial court stated that "[a]ll those orders would remain in full force and effect." *Id.* This Court is not persuaded that there is a compelling difference between the "same rules" and Respondent's statement referring to the orders as "rulings." ECF No. 23 at 25. The orders previously decided by the trial court may be considered rules or rulings without changing the meaning of the trial court's statement or Respondent's argument.

This Court is not persuaded that the public hearing must be "mirror images" of the status conference hearing. *See* ECF No. 29 at 14. The parties merely discussed the issue of defense counsel's termination, which was then discussed in open court with Petitioner who stated that he wanted his counsel to stay on the case. *See* ECF No. 24-3 at 171, 174. The Court finds that Petitioner is incorrect that the trial court preliminarily ruled on this issue prior to discussing it with Petitioner in open court. *See* ECF No. 29 at 14. The parties then discussed the trial court's previous rulings regarding discovery issues concerning B.D's videotaped forensic interview and sex tapes. ECF No. 24-3 at 167-68. The trial court also refrained from ruling on an expert's reports until seeing the evidence at trial if the expert testified. *Id.* at 171-72. Lastly, the parties discussed a second opinion regarding lab tests and that the opinion should be put in writing. *Id.* at

169-71.  Petitioner is incorrect that the trial court made any rulings during this hearing, but only clarified previous orders.

None of this discussion involved legal issues or constitutes an order that would have been carried over to the third trial.  The trial court was merely ensuring that the parties were prepared for trial and made no new rulings that would affect the outcome of the trial.  This Court then finds that Petitioner is not prejudiced by his absence during this status conference hearing even if he properly objected to this issue at trial.  The state court reasonably found that any error by the trial court was cured by the third trial.

Accordingly, as Petitioner's counsel did not object during the second trial and Petitioner suffered no prejudice, this Court denies Plaintiff's right to a public trail claim because the state court did not unreasonably apply clearly established federal precedent.

**Claim 2:  Right to be Present**

Petitioner asserts the trial court denied his constitutional right to be present by excluding him from the status conference hearing on January 11, 2012.  ECF No. 4 at 5.  Petitioner argues that he is entitled to a new trial.  *Id.*

 "A defendant has a right to be present at any critical stage of his criminal proceedings if his presence would contribute to the fairness of the procedure." *Campbell*, 408 F.3d at 1171 (citations omitted).  "The Supreme Court has never

held that the exclusion of a defendant from a critical stage of his proceedings constitutes a structural error," and thus a court reviews the exclusion of a defendant from an in-chambers meeting under harmless error review. *Id.* A critical stage is any "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006) (citations omitted) (finding that a hearing on defense counsel's competence was not a critical stage).

Here, Respondent argues that the status conference was not a critical stage of the proceeding. ECF No. 23 at 27. The Court agrees and finds that Petitioner's rights were not affected by the status conference hearing. As previously discussed, the trial court merely reiterated prior discovery rulings, refrained from ruling on an expert's reports until trial, stated that a second opinion on the lab tests be summarized in writing, and discussed Petitioner's desire to terminate his counsel which was then discussed in open court. This hearing does not constitute a critical stage of the proceeding and Petitioner's presence was not necessary to contribute to the fairness of his status conference hearing.

Even if the conference hearing is a critical stage, the Court finds that Petitioner was not prejudiced, as extensively discussed above. The Court reviews the state court's decision for harmless error and finds no actual prejudice to Petitioner as he was granted a third trial and the issues discussed in the hearing

were not orders that carried over or contaminated the third trial, contrary to Petitioner's allegations. Accordingly, the Court denies Petitioner's right to be present claim.

**Claim 3: Double Jeopardy**

Petitioner alleges a claim for double jeopardy as the conviction for first degree rape of a child requires the same facts as a conviction for first degree child molestation. ECF No. 4 at 8. Petitioner asserts there was a double jeopardy violation because no instruction expressly stated that the jury must find that each count represents an act distinct from all other charged counts. *Id.* at 11-12.

"[T]he Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. That guarantee has been said to consist of three separate constitutional protections." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). Double jeopardy protects against a second prosecution for the same offense after acquittal or conviction. *Id.* It also protects against multiple punishments for the same offense. *Id.*

Generally, the Double Jeopardy Clause prohibits a State or the Federal Government from trying a defendant for a greater offense after it has convicted him of a lesser included offense. *Brown v. Ohio*, 432 U.S. 161, 168-69 (1977). "[O]ne convicted of the greater offense may not be subjected to a second

prosecution on the lesser offense, since that would be the equivalent of two trials for 'the same offense.'" *Jeffers v. United States*, 432 U.S. 137, 150-51 (1977) (citing *Brown*, 432 U.S. at 168). Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense. *Brown*, 432 U.S. at 169.

In the context of jury instructions, the Supreme Court states that an erroneous instruction can rise to the level of constitutional error if it "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citations omitted). The instruction "must be considered in the context of the instructions as a whole and the trial record." *Id.* When reviewing an ambiguous instruction, the court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* (internal quotation marks and citation omitted).

Here, the Washington Court of Appeals noted that "[a] separate and distinct acts instruction is used to prevent double jeopardy when multiple counts of the same charge are presented to the jury." ECF No. 24-1 at 29 (Ex. 2) (citation omitted). The court found that "[c]hild molestation is not a lesser included offense of child rape. Thus, a conviction for both child molestation and child rape does not violate double jeopardy." *Id.* (citation omitted). The court concluded that Petitioner "has not established that the court erred by declining to give his

requested 'distinct acts' instruction. Although we cannot see why the court would not have given the instruction, it was not an abuse of discretion to decline to do so. There was no error." *Id.* at 31.

Respondent emphasizes that the jury instructions in the third trial informed the jury that it "must decide each count separately." ECF Nos. 23 at 33; 24-5 at 227 (Ex. 40). During closing argument, defense counsel made clear that the jury had to find facts to support two different acts, stating that "[y]ou have to prove beyond a reasonable doubt to you that this happened twice ...." ECF Nos. 23 at 34; 24-5 at 250. Respondent notes that Petitioner acknowledged he has Herpes 1 and Herpes 2, as does B.D. ECF Nos. 23 at 34; 24-5 at 254. At trial, the prosecution then argued evidence of two contacts because the herpes virus could be transferred by a finger but there was also penetration trauma from Petitioner's penis. ECF Nos. 23 at 34; 24-5 at 254-55. Respondent insists that even if the jury instructions were ambiguous, there is not a reasonable likelihood that the jury applied the instructions in an unconstitutional manner. ECF No. 23 at 35.

This Court notes that the jury instructions stated, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on the other count." ECF No. 24-5 at 227. The Court finds that even if the jury instruction is erroneous because it did not give Petitioner's "distinct acts" instruction, this error does not rise to the level

of a constitutional error. The Court determines that the state court reasonably found that the trial court did not err in declining to give this instruction. In viewing the context as a whole, defense counsel clarified that the charges required a showing of two separate acts. It is then unlikely that the jury applied the instruction in a way that violated the Constitution when defense counsel emphasized in closing argument that the alleged charges must have happened twice and the prosecution argued that Petitioner may have touched B.D. with his finger and his genitalia. The jury could have reasonably found that two separate acts occurred and it is doubtful they misapplied the disputed instruction.

Accordingly, as to Petitioner's claim of double jeopardy regarding the jury instructions, this Court finds the state court's conclusions were neither an unreasonable determination of the facts nor an unreasonable application of the clearly established constitutional law.

**Claim 4:  *Brady* Violation**

Petitioner claims that the State violated its discovery obligations because it did not disclose that B.D. had a second recorded interview where she made undisclosed statements potentially implicating another suspect. ECF No. 4 at 13.

"A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. W. Viriginia*, 547 U.S. 867, 869 (2006) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). A court should

find that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted). "To state a claim under *Brady*, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff." *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) (citation omitted). A *Brady* violation does not exist in a case in which the allegedly suppressed evidence is known by the defense. *See United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) ("Since suppression by the Government is a necessary element of a *Brady* claim, if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails.") (citations omitted).

As the Washington Court of Appeals discussed above, Ms. Martin disclosed during the third trial that there was a second taped interview of B.D. *See* ECF Nos. 24-1 at 22-26 (Ex. 2); 23 at 38-39; 24-6 at 238-42 (Ex. 41). The trial court ordered the second videotape be produced and ordered a brief continuance to allow defense counsel to contact necessary witnesses to prepare for his defense. ECF No. 24-6 at 240-42. Defense counsel then put on relevant witnesses who were mentioned in

the videotape.  ECF Nos. 24-1 at 22-26; 24-5 at 159-95 (Ex. 40).  Respondent emphasizes that neither party sought to introduce the second videotape.  ECF No. 23 at 41.

The Washington Court of Appeals asserted that the videotape was in possession and control of CPS, but discovery rules apply only to materials within the possession of the prosecutor's office.  ECF No. 24-1 at 249 (Ex. 2).  The court found that "[e]ven if we assume that CPS was performing a law enforcement function, thus bringing this case within the orbit of *Brady*, the argument founders on the materiality prong of the *Brady* test."  *Id.* at 249-50.  The court emphasized:

> Even after the tape was disclosed, neither party sought to admit it at trial …. B.D. did not provide any information that suggested someone else had raped and molested her.  There was no apparent prejudice to the defense from the late disclosure of the videotape's existence.  The defense had the opportunity to call witnesses related to the tape and had time to investigate the matter before putting on its defense.

*Id.* at 250.

Petitioner argues that to escape a *Brady* sanction, disclosure must have been made when it would be of value to the accused.  ECF No. 29 at 16.  This Court agrees and finds that the second videotape was disclosed at a time when it could be of value to Petitioner and his defense.  This Court determines that the state court's rejection of Petitioner's *Brady* claim was a reasonable application of clearly established federal law.  The state court correctly determined that even if the

prosecution withheld the videotape, the nondisclosure did not prejudice Petitioner. Defense counsel was granted a continuance prior to even putting on Defendant's case. The defense then called to the stand those witnesses believed to be important in addressing B.D.'s statements regarding Brian. Yet, defense counsel chose not to submit the videotape into evidence. Defense counsel had the opportunity to address this videotape and Petitioner did not suffer prejudice from the initial nondisclosure.

Accordingly, this Court finds the state court's conclusions were neither an unreasonable determination of the facts nor an unreasonable application of the clearly established constitutional law as set forth by *Brady*.

**Claim 5: Cumulative Errors**

Petitioner alleges that the accumulation of errors of the trial court "violated the due process [g]uarantee of fundamental fairness." EF No. 4 at 16 (citation omitted). Petitioner states that the errors "created a cumulative and ending [p]rejudice that was likely to have materially affected the jury's verdict …." *Id.*

Respondent argues that Petitioner fails to show that this error is based on clearly established federal law because the Supreme Court has not established such a rule. ECF No. 23 at 42. Respondent also contends that Petitioner has not shown the existence of a constitutional error in his claims and that he cannot cumulate the effect of errors until he shows the existence of an individual error. *Id.*

The Washington Court of Appeals declined to reach Petitioner's cumulative error claim "in light of our conclusion as to his trial claims."  ECF No. 24-1 at 27. This Court agrees as Petitioner fails to show any errors based on clearly established federal law, and thus there cannot be an accumulation of errors that materially affected the jury's verdict.

Based on the foregoing, this Court finds that the state court's rejection of Petitioner's claims was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor an unreasonable determination of the facts in light of the evidence that was presented in the state court proceeding.  Thus, habeas relief is not warranted on these claims.

## III.    Certificate of Appealability

A petitioner seeking post-conviction relief under section 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further."
*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

This Court concludes that Petitioner is not entitled to a COA because he has not demonstrated that jurists of reason could disagree with this Court's resolution of his constitutional claims or could conclude that any issue presented deserves encouragement to proceed further.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 4) is **DENIED**.

2. Any appeal taken by Petitioner of this matter would not be taken in good faith as he fails to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is **DENIED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** August 2, 2018.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING PETITIONER'S AMENDED WRIT OF HABEAS CORPUS ~ 28